## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL NO.** _____ |
| **v.** | : | **DATE FILED:** _____ |
| **WYLENE JOHNSON** | : | **VIOLATIONS:** |
| **COOKIE BUNDY** | | **18 U.S.C. § 1341 (mail fraud – 4 counts)** |
| **HAKEEM COOPER** | : | **18 U.S.C. § 641 (theft of public money –** |
| **BARRY MITCHELL** | | **4 counts)** |
| **LOUIS BARNETT** | : | **18 U.S.C. § 2 (aiding and abetting)** |
| | | **Notice of forfeiture** |

## I N D I C T M E N T

### COUNTS ONE THROUGH FOUR
#### (Mail Fraud)

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

#### INTRODUCTION

1.      On March 13, 2020, the President declared the ongoing COVID-19
pandemic to be an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and
Emergency Assistance Act.

2.      On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security
Act (CARES Act) was signed into law. The CARES Act created the PUA (Pandemic
Unemployment Assistance) program, which provided unemployment benefits to individuals not
eligible for regular unemployment compensation or extended unemployment benefits.

3.      The PUA program was administered by the various states, including the
Commonwealth of Pennsylvania, but its benefits were funded by the federal government.  In
Pennsylvania, the Pennsylvania Department of Labor and Industry (PA DLI) administered the

PUA program, on behalf of the United States Department of Labor, which was responsible for overseeing the PUA program.

4.     PA DLI required that a PUA claim be made online via the PUA website, https://pua.benefits.uc.pa.gov. The applicant was required to enter personal identification information (PII), including name, date of birth, social security number, email address, telephone number, and a physical address. An applicant was also required to answer a series of questions that enabled the PA DLI to determine the applicant's eligibility and payment amount. Once awarded PUA benefits, the applicant was required to submit weekly certifications showing continuing eligibility.  While each state administered the application slightly differently, every state referenced in this indictment required that the application for PUA benefits as well as the weekly certifications be made online.

5.     While each state administered its own PUA program, the application used by each state was a standard online application form. The form consisted of 27 different sections including a range of questions within each section. Some of the questions asked for the applicant's PII and biographical information while other questions dealt with the applicant's eligibility for the program and work history. An applicant was required to provide his or her current employment status and answer if he or she was able to accept a job if offered. If the applicant could not accept a job, the applicant was required to provide a reason for not being able to accept a job.

6.     The applicant was also asked whether they were unemployed as a result of a pandemic or major disaster. If the applicant's employment had not been affected as a result of a pandemic or major disaster, the applicant was not eligible for PUA benefits. If the applicant's

2

employment had been affected by a pandemic or major disaster, the application was also required to note in which state the applicant was affected by the pandemic or major disaster and the nature of the pandemic or major disaster.

7.    In the 'self-certification' section of the application, the applicant was required to answer questions regarding the nature and impact of a pandemic or major disaster on the applicant's employment status. First, the applicant was required to disclose the pandemic or major disaster which affected the applicant's employment. An applicant was only eligible to receive weekly PUA benefits if the applicant was unemployed for reasons related to the COVID-19 pandemic. Second, the applicant was required to disclose the date of the applicant's last day of work. Finally, if the applicant quit their job due to COVID-19, the applicant was required to supply a reason for quitting.

8.    As to all of these preceding questions, the applicant was required to "acknowledge that I understand that making the certification is under penalty of perjury and intentional misrepresentation in self-certifying that I may fall in one or more of these categories is fraud."

9.    The applicant was also required to complete another certification, under penalty of perjury, that if offered a job, the applicant must be able to accept it. An applicant was required to read and understand the PUA Compensation Handbook, which indicated that any earnings must be reported for each week a person works. The applicant was also required to certify once again as to the application that "all information is true and complete" and that if the applicant provided false information the applicant could be subject to criminal prosecution.

3

10.     If PA DLI or another state's administrative agency approved an application for PUA benefits, the applicant was then eligible to receive benefits in the form of checks, electronic fund transfers, or debit cards, and the checks and debit cards were mailed via the United States Postal Service to the physical address that appeared on the application. When a state agency approved an applicant's eligibility, the agency also established the applicant's period of benefits, amount of weekly benefit, and maximum total benefit amount. However, even after this occurred, the applicant did not receive the benefits unless the applicant performed the appropriate weekly certifications.

11.     The recipient of PUA benefits received a unique applicant number that corresponded to the applicant's initial application and weekly certifications. Payments for PUA were based on a seven-day period, from Sunday through Saturday. Thus, the benefits recipient was required to certify every seven days that he or she: a) was ready, willing and able to work each day; b) was seeking full time employment; c) did not refuse any job offers or referrals; and, d) had reported any employment during the week and the gross pay or other payments received. The weekly certification was required to be completed in a timely manner. A delay in the weekly certification could result in a delay or denial of further payments.

12.     From on or about May 1, 2020, to on or about October 22, 2020, defendant WYLENE JOHNSON lived at 6338 Regent Street, Philadelphia, Pennsylvania.

## THE SCHEME

13.     From on or about May 1, 2020, to on or about September 6, 2021, in the Eastern District of Pennsylvania, and elsewhere, defendants

**WYLENE JOHNSON,
COOKIE BUNDY,**

4

**HAKEEM COOPER,**
**BARRY MITCHELL, and**
**LOUIS BARNETT,**

and others known and unknown to the grand jury, devised and intended to devise a scheme to

defraud state and federal agencies, and to obtain money and property, specifically PUA benefits,

by means of false and fraudulent pretenses, representations, and promises, in violation of Title

18, United States Code, Section 1341.

### MANNER AND MEANS

It was part of the scheme that:

14.    Defendants WYLENE JOHNSON, COOKIE BUNDY, HAKEEM

COOPER, BARRY MITCHELL, and LOUIS BARNETT, as well as Persons #1 and #2, known

to the grand jury, associated with one another in and around the area of Oxford Village in

Philadelphia, and on public social media platforms. Defendants JOHNSON and BUNDY

referred to each other as siblings on social media posts. Defendants JOHNSON, BUNDY,

COOPER, MITCHELL, and BARNETT, along with Person #1, posted comments and

photographs of themselves on public social media, including photographs of them together at

birthday parties and other social gatherings, sometimes wearing clothing bearing a common

insignia – all reflecting their common association.

15.    Defendants COOKIE BUNDY, HAKEEM COOPER, BARRY

MITCHELL, and LOUIS BARNETT filed and caused to be filed fraudulent PUA

applications in their names with their respective PII. All applications filed in the names of

defendants BUNDY, COOPER, MITCHELL, and BARNETT listed a mailing address of 6338

Regent Street, Philadelphia, Pennsylvania.

5

16.     Defendant WYLENE JOHNSON filed and caused to be filed fraudulent PUA applications in the names of other individuals with those individuals' respective PII and fraudulent PUA applications in the names of other individuals using her own PII. The mailing address listed on each of these applications was the home address of defendant JOHNSON, 6338 Regent Street, Philadelphia, Pennsylvania.

17.     After the fraudulent PUA applications had been filed, defendants WYLENE JOHNSON, COOKIE BUNDY, HAKEEM COOPER, BARRY MITCHELL, and LOUIS BARNETT filed and caused to be filed the weekly certifications associated with each respective application in order for PUA benefits to be issued on that application.

18.     After PA DLI issued either a check, direct deposit payment, or a PUA debit card for payment on each application, defendants WYLENE JOHNSON, COOKIE BUNDY, HAKEEM COOPER, BARRY MITCHELL, and LOUIS BARNETT deposited the checks into bank accounts, arranged for the direct deposits to be sent to a bank account which they controlled, and/or collected and possessed the PUA debit card issued on the application. Thereafter, defendants JOHNSON, BUNDY, COOPER, MITCHELL, and BARNETT made direct expenditures using the PUA debit cards, withdrew the money from those cards at ATMs, and/or transferred the money to financial accounts controlled by them.

19.     On or about each of the following dates, in the Eastern District of Pennsylvania, and elsewhere, defendants

**WYLENE JOHNSON,**
**COOKIE BUNDY,**
**HAKEEM COOPER,**
**BARRY MITCHELL, and**
**LOUIS BARNETT,**

6

for the purpose of executing the scheme described above, knowingly caused to be delivered by United States mail or a private carrier, according to the directions thereon the documents described below, each mailing constituting a separate count:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 1 | May 26, 2020 | A PUA check mailed from Harrisburg, Pennsylvania, addressed to defendant HAKEEM COOPER at 6338 Regent Street, Philadelphia. Pennsylvania |
| 2 | May 27, 2020 | A PUA check mailed from Harrisburg, Pennsylvania, addressed to defendant BARRY MITCHELL at 6338 Regent Street, Philadelphia, Pennsylvania. |
| 3 | June 1, 2020 | A PUA check mailed from Harrisburg, Pennsylvania, addressed to defendant COOKIE BUNDY at 6338 Regent Street, Philadelphia, Pennsylvania. |
| 4 | January 27, 2021 | A PUA debit card mailed from either Shoreview, Indiana or Minneapolis, Minnesota, addressed to defendant LOUIS BARNETT at 4730 Penn Avenue, Philadelphia, Pennsylvania. |

All in violation of Title 18, United States Code, Section 1341.

**COUNT FIVE**
**(Theft of Public Money)**

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1.      Paragraphs 1 through 12 and 14 through 18 of Counts One Through Four are incorporated here.

2.      Defendants WYLENE JOHNSON, COOKIE BUNDY, HAKEEM COOPER, BARRY MITCHELL, and LOUIS BARNETT filed and caused to be filed approximately 90 PUA applications which listed 6338 Regent Street, Philadelphia, Pennsylvania, as the mailing address, and falsely stated that the named applicant had lost his or her job on a particular date due to the COVID-19 pandemic.

3.      The statements on each application were false as the respective applicant listed had not lost his or her job due to the COVID-19 pandemic and the last day of work listed on each application necessarily was not the applicant's last day of work due to the COVID-19 pandemic.  As a result of the false statements on each of the applications, PA DLI approved the applications and dispersed a total amount of funds of at least $954,685.

4.      From on or about May 1, 2020, to on or about September 6, 2021, in the Eastern District of Pennsylvania, and elsewhere, defendants

**WYLENE JOHNSON,**
**COOKIE BUNDY,**
**HAKEEM COOPER,**
**BARRY MITCHELL, and**
**LOUIS BARNETT,**

and others known and unknown to the grand jury, knowingly and willfully stole and converted, and aided and abetted the stealing and conversion of, to their use and the use of another, money

8

and a thing of value of the United States, specifically, Pandemic Unemployment Assistance funds under the care of the United States Department of Labor, in a value exceeding $1,000.

In violation of Title 18, United States Code, Sections 641 and 2.

## COUNT SIX
## (Theft of Public Money)

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1.      On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act") (Pub. L. 116-136) became law and provided emergency assistance for individuals, families, and businesses affected by the coronavirus pandemic. The CARES Act provided multiple programs for businesses including the Economic Injury Disaster Loan ("EIDL") program. The EIDL program provided low-rate emergency loan options for struggling businesses for amounts up to $500,000. This program was administered by the United States Small Business Administration ("SBA"). The SBA was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. Applications for the EIDL program were made through an online SBA portal.

2.      As part of the application progress, an applicant was required to submit information about the applicant's business. This information included, amongst other categories, the organization type of the business, gross revenues for the twelve months preceding January 31, 2020, cost of goods sold for the twelve months preceding January 31, 2020, and the number of employees working at the business.

3.      As part of the application, an applicant could also request an emergency advance of $10,000. The SBA paid this emergency advance within three days of the applicant submitting the information. To receive this advance and the ultimate loan, the applicant was required to enter bank account information into which the advance funds and loan were to be deposited.

4.    Before an applicant could submit the application, the applicant was required to certify, under the penalty of perjury and laws of the United States, that the information on the application is true and correct.

5.    The SBA proscribed limited uses for any funds, including the emergency advance, dispersed under this program. The SBA required that the applicant only "use all proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform Commercial Code (UCC) lien filing fees."

6.    On or about June 29, 2020, defendant WYLENE JOHNSON submitted an EIDL application. On the application, defendant JOHNSON falsely stated that she owned a sole proprietorship located at her residential address in Philadelphia, Pennsylvania. Defendant JOHNSON also falsely stated that: a) her business had 13 other employees; and b) in the twelve months prior to the pandemic hers business had $142,000 in sales and $18,000 in cost of goods sold. For deposit information, defendant JOHNSON provided her personal Police and Fire Federal Credit Union account ending in 2651.

7.    In addition to the above-listed information on the application, defendant WYLENE JOHNSON requested an emergency advance from the SBA.

8.    Prior to submitting the application, defendant WYLENE JOHNSON certified that all information on the application was true and correct under the penalty of the laws of the United States and perjury. The statements on the application were not true and correct but false as the COVID-19 pandemic did not cause any business interruption to WYLENE JOHNSON and the business did not have the number of employees or prior revenue listed on the application.

11

9.      On or about July 2, 2020, defendant WYLENE JOHNSON received an emergency advance of $10,000, which the SBA deposited into her Police and Fire Credit Union personal bank account. This amount was reversed by the SBA from her bank account on or about July 9, 2020.

10.      On or about July 9, 2020, defendant WYLENE JOHNSON executed a Loan Authorization and Agreement ("LA&A") with the SBA for an EIDL benefit in the amount of approximately $52,005. As part of this LA&A, defendant JOHNSON certified that she would spend the loan only on specified purposes. Defendant JOHNSON also specifically certified the following statement was true and accurate, "Under penalty of perjury of the United States of America, I hereby certify that I am authorized to apply for and obtain a disaster loan on behalf of Borrower, in connection with the effects of the COVID-19 emergency."

11.      In addition to the false statements made on her initial application, defendant WYLENE JOHNSON also made false statements when executing the LA&A. Defendant JOHNSON was not authorized under the EIDL program to apply for and obtain a disaster loan and she did not use the proceeds of the loan for authorized purposes. As a result of defendant JOHNSON's submission of an application with false statements and her execution of a false LA&A, on or about July 13, 2020, the SBA deposited approximately $52,005 into a PNC bank account owned by defendant JOHNSON.

12.      Thereafter, from on or about July 13, 2020, to on or about October 2, 2020, defendant WYLENE JOHNSON did not spend the EIDL funds on proper business uses as required by the application and LA&A. Rather, defendant JOHNSON spent funds on personal goods and items, including multiple expenditures at two different sporting goods stores, an electronics store,

a luxury handbag store, and on a vacation stay at an AirBnB location.  Defendant JOHNSON also withdrew approximately $40,000 in cash from the account after the July 13, 2020 SBA deposit. By on or about October 2, 2020, no funds were left in defendant JOHNSON's PNC account.

13.     From on or about June 29, 2020, to on or about October 2, 2020, in the Eastern District of Pennsylvania, and elsewhere, defendant

**WYLENE JOHNSON**

knowingly and willfully stole and converted, to her use and the use of another, money and a thing of value of the United States, specifically, Economic Injury Disaster Loan funds under the care of the United States Small Business Administration, in a value exceeding $1,000.

In violation of Title 18, United States Code, Section 641.

13

## COUNT SEVEN
### (Theft of Public Money)

## THE GRAND JURY FURTHER CHARGES THAT:

At all times material to this indictment:

1.      Paragraphs 1 through 5 of Count Six are incorporated here.

2.      On or about July 6, 2020, defendant LOUIS BARNETT submitted an EIDL application. On the application, defendant BARNETT falsely stated that he owned a sole proprietorship located at his residential address in Philadelphia, Pennsylvania.  Defendant BARNETT also falsely stated that: a) the business activity was "agriculture;" b) his business had nine other employees; and c) in the twelve months prior to the pandemic his business had $140,000 in sales and $18,000 in cost of goods sold.   For deposit information, defendant BARNETT provided his personal Police and Fire Federal Credit Union account ending in 5731.

3.      In addition to the above-listed information on the application, defendant LOUIS BARNETT requested an emergency advance from the SBA.

4.      Prior to submitting the application, defendant LOUIS BARNETT certified that all information on the application was true and correct under the penalty of the laws of the United States and perjury.  The statements on the application were not true and correct but false as the COVID-19 pandemic did not cause any business interruption to defendant BARNETT and the business did not have the number of employees or prior revenue listed on the application.

5.      On or about July 9, 2020, defendant LOUIS BARNETT received the emergency advance of $9,000, which the SBA deposited into his Wells Fargo personal bank account. Defendant BARNETT did not spend the emergency advance on proper uses as authorized by the SBA.  Rather, he spent the emergency advance on personal items.

14

6.      From on or about July 6, 2020, to on or about September 1, 2020, in the

Eastern District of Pennsylvania, and elsewhere, defendant

**LOUIS BARNETT**

knowingly and willfully stole and converted, to his use and the use of another, money and a thing

of value of the United States, specifically, Economic Injury Disaster Loan funds under the care of

the United States Small Business Administration, in a value exceeding $1,000.

In violation of Title 18, United States Code, Section 641.

15

## COUNT EIGHT
### (Theft of Public Money)

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1.　　　Paragraphs 1 through 5 of Count Six are incorporated here

2.　　　On or about July 8, 2020, defendant BARRY MITCHELL submitted an EIDL application. On the application, defendant MITCHELL falsely stated that he owned a sole proprietorship located at his residential address in Philadelphia, Pennsylvania. Defendant MITCHELL also falsely stated that: a) the business activity was "tattoo and piercing;" b) his business had 12 other employees; and c) in the twelve months prior to the pandemic his business had $47,000 in sales and $12,000 in cost of goods sold.　For deposit information, defendant BARNETT provided his personal PNC bank account ending in 2383.

3.　　　In addition to the above-listed information on the application, defendant BARRY MITCHELL requested an emergency advance from the SBA.

4.　　　Prior to submitting the application, defendant BARRY MITCHELL certified that all information on the application was true and correct under the penalty of the laws of the United States and perjury. The statements on the application were not true and correct but false as the COVID-19 did not cause any business interruption to defendant MITCHELL and the business did not have the number of employees or prior revenue listed on the application.

5.　　　On or about July 11, 2020, defendant BARRY MITCHELL received the emergency advance of $3,000, which the SBA deposited into his personal PNC bank account. Defendant MITCHELL did not spend the emergency advance on proper uses as authorized by the

16

SBA. Rather, he spent the emergency advance funds on personal items.

      6.     From on or about July 8, 2020, to on or about October 1, 2020, in the

Eastern District of Pennsylvania, and elsewhere, defendant

**BARRY MITCHELL**

knowingly and willfully stole and converted, to his use and the use of another, money and a thing

of value of the United States, specifically, Economic Injury Disaster Loan funds under the care of

the United States Small Business Administration, in a value exceeding $1,000.

      In violation of Title 18, United States Code, Section 641.

17

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.    As a result of the violations of Title 18, United States Code, Sections 641 and 1341, as set forth in this indictment, defendants

**WYLENE JOHNSON**
**COOKIE BUNDY,**
**HAKEEM COOPER,**
**BARRY MITCHELL, and**
**LOUIS BARNETT**

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds traceable to the commission of such offenses, including, but not limited to, the sum of $1,018,690.

      2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

      (a)    cannot be located upon the exercise of due diligence;

      (b)    has been transferred or sold to, or deposited with, a third party;

      (c)    has been placed beyond the jurisdiction of the Court;

      (d)    has been substantially diminished in value; or

      (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c) incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

18

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL:



**JACQUELINE C. ROMERO**
**UNITED STATES ATTORNEY**

19

No._ _ _ _ _ _ _ _ _ _

## UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

Criminal Division

### THE UNITED STATES OF AMERICA

vs.

Wylene Johnson, Cookie Bundy, Hakeem Cooper, Barry Mitchell, Louis Barnett

INDICTMENT

Counts
18 U.S.C. § 1341, (mail fraud) 4 Counts and 18 U.S.C. § 641 (theft of public money) 4 Counts

Filed in open court this _____ _8th_ _____ day,
Of _SEPtember_ A.D. 20 _20_

_____
Clerk

Bail, $_____